UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 09-326-GWU


LELAND HOLLAND,                                                          PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                           DEFENDANT.


## INTRODUCTION

Leland Holland brought this action to obtain judicial review of an unfavorable

administrative decision on his applications for Disability Insurance Benefits and for

Supplemental Security Income.  The case is before the court on cross-motions for

summary judgment.


## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
        If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
        activity, does he have any "severe" impairment or combination
        of impairments--i.e., any impairments significantly limiting his
        physical or mental ability to do basic work activities?  If not, a
        finding of non-disability is made and the claim is denied.

1

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

<u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u>  Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Holland, a former small parts assembler, auto detailer, driver, auto mechanic and security guard, suffered from impairments related to mild coronary artery disease, complaints of back pain, and mild sensorineural hearing deficit.  (Tr. 62, 67).  Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 65).  Since the ALJ found that the claimant's past relevant work could still be performed, he could not be considered totally disabled.  (Tr. 67).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Holland could return to his past relevant work, the ALJ relied heavily upon the testimony of Vocational Expert James Miller.  Miller reported that the plaintiff's past work as an appliance assembler and service station attendant would be classified as medium in exertion and semi-skilled.  (Tr. 29-30).  His work as an auto detailer was medium and unskilled.  (Tr. 30).  The work as an

automobile mechanic was described as medium in exertion and skilled. (Id.). The job of driver at the auto auction was said to be light and unskilled. (Id.). The skills from this position would transfer to light and sedentary level work. (Id.). The claimant's work as a construction worker was noted to be heavy and unskilled while garbage collector was described as very heavy and unskilled. (Id.). The hypothetical question presented to Miller included an exertional limitation to medium level work, restricted from a full range by such non-exertional restrictions as (1) an inability to perform work in an extremely hot or cold environment; (2) no concentrated exposure to pulmonary irritants; and (3) no more than frequent performance of climbing, bending or stooping. (Tr. 30-31). In response, the witness testified that, with the exception of the heavy level jobs of construction worker and garbage collector, all of Holland's past work could still be performed. (Tr. 31). The ALJ relied upon this information to support the administrative decision.

Dr. Barry Burchett examined Holland and noted a diagnostic impression of a hearing impairment, recurrent low back pain without radiculopathy, being status post right clavicular fracture, and possible overmedication for hypertension. (Tr. 297). Dr. Burchett completed a Medical Source Statement of Ability to do Work-Related Activities Form upon which he indicated that the plaintiff could lift and carry up to 100 pounds occasionally and 50 pounds frequently. (Tr. 300). The plaintiff would be able to sit for three hours at a time for a total of eight hours a day. (Tr.

301).  Standing and walking could each be done for a total of six hours a day in two hour segments.  (Id.).  Stooping and kneeling were permitted occasionally and crouching and crawling frequently.  (Tr. 303).  The restrictions concerning stooping and kneeling were a bit more severe than that presented to the vocational expert.  However, the claimant had the burden of proving he could not return to his past relevant work and did not indicate on the Disability Report (Tr. 122-139) and the Work History Report (Tr. 140-149) that these restrictions would preclude the past work to which the ALJ found he could return.  Therefore, Dr. Burchett's report supports the administrative decision.

Dr. Kevin Kavanagh evaluated Holland's hearing.  Dr. Kavanagh found 88 percent bilateral speech discrimination and indicated that hearing amplification would be helpful.  (Tr. 230).  The doctor specifically reported that with amplification, the claimant could return to his past work as a mechanic without difficulty.  (Id.). Therefore, this report did not support the plaintiff's claim of disability.

Dr. Sudhideb Mukherjee (Tr. 233) and Dr. Parandhamulu Saranga (Tr. 251) each reviewed the record and opined that Holland did not suffer from a "severe" physical impairment.  These opinions also support the administrative decision.

Dr. Neeraj Mahboob, a treating source, identified extremely severe physical restrictions on a Physical Capacities Evaluation Form, restricting Holland to less than a full range of sedentary level work.  (Tr. 253).  The ALJ rejected Dr.

9

Mahboob's opinion as binding because he did not believe that it was supported by the physician's own clinical findings and it was contrary to the weight of the medical record. (Tr. 67). The plaintiff asserts that this finding was erroneous. However, as noted by the defendant, the physician cited no medical evidence in support of his very severe physical restrictions. The record reveals that upon establishing care with the doctor, Holland had a blood pressure reading of 110/70 and his pulse and respiration were within normal limits. (Tr. 249). Dr. Mahboob did not detect sensory or motor deficit upon several physical examinations of the patient. (Tr. 237, 239, 241, 243, 245, 247, 249). The claimant underwent CT scans of the pelvis and abdomen as a result of complaints of abdominal pain. These did not reveal any abnormal findings. (Tr. 205-206). Dr. Mahboob treated Holland at Marymount Medical Center in August of 2006 for complaints of chest pain and shortness of breath. (Tr. 214). An echocardiogram revealed only mild left atrial enlargement. (Tr. 207). A Nuclear Medicine Stress Test Report produced a normal perfusion study. (Tr. 210). A myocardial infarction was ruled out. (Tr. 212). Therefore, under these circumstances, the court finds no error.

Holland asserts that the ALJ did not consider whether he could meet the durational requirements of substantial activity to maintain employment. However, Dr. Burchett, Dr. Kavanagh and the medical reviewers did not indicate that the

plaintiff's impairments would prevent him from maintaining employment.  Therefore, the court must reject the claimant's argument.

Holland also argues that the ALJ erred by failing to consider the combination of his impairments.  However, the court has concluded that the ALJ properly rejected the severe impairments noted by Dr. Mahboob.  The plaintiff has failed to show that his past work would be precluded by his other impairments.  Therefore, the court must reject this argument.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 14th day of July, 2010.


Signed By:

*G. Wix Unthank*

**United States Senior Judge**

11